UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUOT KUOT,

                    Petitioner,

     v.

PAMELA BONDI, et al. ,

                 Respondents.

CASE NO. 2:25-cv-02313-BAT

**ORDER GRANTING HABEAS CORPUS PETITION**

Petitioner, a detainee of the Northwest Immigration Processing Center (NWIPC), requests the Court grant 28 U.S.C. § 2241 habeas relief and order Respondents to: (1) immediately release him from detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) provide him a hearing in which the government must show he is a risk of flight or a danger to community before redetaining him as required by the due process clause; (3) not remove him to a third county in an unconstitutionally punitive manner, and provide him notice and an opportunity to respond to any third country removal attempt in a reopened removal proceeding.

Respondent opposes Petitioner's request for relief arguing Petitioner was convicted of an aggravated felony; based upon this conviction he is subject to an order of removal made final in 1999; he was released in 2000 and was rearrested in May 2025 on new felony charges; and upon release from criminal custody on those criminal charges, he was lawfully placed into

immigration detention. Respondent disputes Petitioner's *Zadvydas* claim and contends "ICE is actively working with to effectuate Petitioner's removal to Vietnam and expects to be able to do so in the reasonably foreseeable future." Dkt.7 at 2. As to Petitioner's claims regarding removal to a third country, Respondents aver "ICE has no intention of removing Petitioner to a third country." *Id*.

## BACKGROUND

The government avers and Petitioner does not dispute Petitioner is a native and citizen of Vietnam who entered the United States in 1978. Petitioner was convicted of an aggravated felony in 1999, as defined under 8 U.S.C. § 1101(a)(43); he was ordered removed by an immigration judge in November 1999 and that order is final; and Petitioner was released on bond on March 17, 2000. On May 15 2025, ICE was notified Petitioner had been arrested in California for felon in possession of a firearm, infliction of injury on a spouse or cohabitant, damage to a communication device and violation of post-release community supervision conditions. ICE took custody of Petitioner on May 30, 2025 and transferred him to the NWIPC on June 2, 2025 where he remains to this date. The California state criminal charges are still pending.

After taking custody of Petitioner, ICE found on June 15, 2025 Petitioner's file contained no travel document. On October 24, 2025, Respondents began working to obtain translated documents that are needed to submit a travel document request to Vietnam. On November 2, 2025 Petitioner's A-file was requested.

On November 18, 2025, Petitioner by counsel filed the instant habeas petition. The government filed a response, Petitioner filed a reply and notice of supplemental authority and the matter noted for December 8, 2025 is now ripe for the Court's consideration.

**DISCUSSION**

The parties consented to proceed before the undersigned United States Magistrate Judge and this Court thus has the authority to grant habeas relief if Petitioner demonstrates his custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). Petitioner bears the burden of proving by a preponderance of the evidence he is held contrary to law. *Parke v. Raley*, 506 U.S. 20, 31 (1992). Under 28 U.S.C. § 2241, federal courts have jurisdiction over challenges to the detention of noncitizens before removal. *Zadvydas v. Davis*, 533 U.S. 678 (2001). This Court lacks jurisdiction over final orders of removal. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1005 (W.D. Wash. 2019). But the Court retains jurisdiction over Petitioner's habeas petition, which does not challenge the order of removal but his detention, the process used to detain him, and the designation of a removal country outside of removal proceedings. *Id.*

A.    ***Zadvydas* Claim**

Plaintiff contends he is detained in violation of the Due Process Clause of the Fifth Amendment because his removal is not reasonably foreseeable under *Zadvydas v. Davis*, 533 U.S. 678 (2001). The government disagrees and claims Petitioner's removal is reasonably foreseeable. The parties agree Petitioner is detained under 8 U.S.C. § 1231. Under § 1231, the government must detain a noncitizen during the 90 days following the entry of the removal order, during which time ICE attempts removal. 8 U.S.C. § 1231(a)(2)(A). Petitioner was originally detained some 25 years ago, released, and redetained by ICE about May 30, 2025; the 90-day removal period has obviously expired. After 90 days, the government may detain the noncitizen or release the noncitizen under supervision. § 1231(a)(6).

While the government may detain a noncitizen, § 1231 "does not permit indefinite detention." *Zadvydas*, 533 U.S. 678 at 689. "[T]he Due Process Clause applies to all 'persons'

1  within the United States, including [noncitizens], whether their presence here is lawful, unlawful,

2  temporary, or permanent." *Id.* at 693. Due process requires a noncitizen be detained under

3  § 1231 no longer than "a period reasonably necessary to bring about . . . removal from the United

4  States." *Id.* at 689. Detention is presumptively reasonable for six months after the removal

5  period. "After this 6-month period, once the [noncitizen] provides good reason to believe that

6  there is no significant likelihood of removal in the reasonably foreseeable future, the

7  Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the

8  government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief.

9      The record shows Petitioner was initially detained between 1999 and 2000 and redetained

10  on May 30, 2025. Petitioner's detention in 2025, alone, exceeds the six-month presumptively

11  reasonable limit that *Zadvydas* noted.

12      The record also shows Petitioner was convicted of an aggravated felony in 1999 and is

13  subject to a final order of removal. Although the conviction provides grounds for removal there

14  is no evidence the government attempted to remove Petitioner over the last 25 years. The first

15  inkling of any removal attempt arose this year when Petitioner was redetained in May, 2025.

16  Upon redetention, the government avers it realized in June 2025, Petitioner's immigration file

17  lacked a travel document necessary for removal. While the government avers it is now taking

18  steps to obtain a travel document, a request for a travel document has not yet been completed and

19  submitted to Vietnam, and no timeframe for the completion of the steps needed to submit a travel

20  document request to Vietnam has been proffered. Thus, it is undisputed that although Petitioner

21  could have been removed some 25 years ago, the government did not obtain a travel document to

22  do so, and even though Petitioner has been detained for more than six months in 2025 alone, the

23

ORDER GRANTING HABEAS CORPUS
PETITION - 4

1   government still has not obtained a travel document from Vietnam, or even completed an

2   application for a travel document.

3          In sum, in making an individualized determination, the Court finds Petitioner has met his

4   burden to show good reason to believe there is no significant likelihood of his removal in the

5   reasonably foreseeable future. Petitioner has met his burden because it is undisputed the

6   government has failed to indicate a date or timeframe for his removal, has not even completed a

7   travel document request to submit to Vietnam and has not set forth facts showing when it expects

8   to finalize or send the travel document request to Vietnam. *See Seretse-Khama v. Ashcroft*, 215

9   F. Supp. 2d 37, 50 (D.D.C. 2002) (removal not reasonably foreseeable where government had

10  "not demonstrated . . . that any travel documents are in hand, nor have they provided any

11  evidence, or even assurances from the [foreign] government, that travel documents will be issued

12  in a matter of days or weeks or even months"); *Singh v. Whitaker*, 362 F. Supp. 3d 93, 101–02

13  (W.D.N.Y. 2019) (removal not reasonably foreseeable where government had no specific

14  timeframe for removal and no travel document despite frequent follow-ups with the consulate);

15  *Andreasyan v. Gonzales*, 446 F.Supp.2d 1186, 1189-90 (W.D. Wash. 2006) (finding removal not

16  likely in reasonably foreseeable future when noncitizen detained for eight months and consulate

17  stated only that case was still under review pending a decision).

18         As Petitioner has met his initial *Zadvydas* burden, the burden shifts to Respondents to

19  rebut Petitioner's showing. Respondents fail to do so.

20         Respondents submitted the "declaration" of a Deportation Officer in support of its

21  argument the Court should deny the writ. The declaration is insufficient. 28 U.S.C. § 1746(2)

22  requires a perjury statement for declarations executed within the country, and the deportation

23  officer's "declaration" lacks such a statement. The "declaration" in fact contains no affirmative

ORDER GRANTING HABEAS CORPUS
PETITION - 5

assertion the declaration's contents are true. As Respondents rely upon an invalid "declaration" they have failed to rebut Petitioner's contention his due process rights have been violated.

Even assuming the Deportation Officer's declaration is true, all that Respondents show is they are actively working to obtain a travel document to remove Petitioner to Vietnam and since Vietnam has recently issued travel documents to some of its citizens, they believe there is a significant likelihood of Petitioner's removal to Vietnam in the foreseeable future. This representation does not rebut Petitioner's contention.

First, there is no dispute Petitioner has been subject to removal for 25 years and no travel documents has been procured. By the government's own admission, there is no travel document to remove Petitioner, and an application for a travel document has not even been completed. Respondents represent the are actively working on procuring a travel document, but this is a statement that applies to every removal cases and thus this fact alone does not establish there is a reasonable likelihood of removal in the foreseeable future. Respondents' claim there is a reasonably likelihood Petitioner will be removed within the foreseeable future seems to rest on the claim that if they complete a travel document application, a travel document might issue, and it is reasonably likely Petitioner will be removed because Vietnam has recently agreed to accept the return of some of its citizens who are subject to removal. The Court finds these representations are speculative and fail to rebut Petitioner's contention his removal not reasonably foreseeable. *See e.g. Huynh v. Bondi*, C25-2371-KKE (W.D. Wash. De. 23, 2025).

The Court also declines to find the representation that since some citizens of Vietnam have been removed recently, there is a basis to find Petitioner will be removed in the reasonably foreseeable future. A travel document has not been procured so there is little basis to conclude Vietnam is even considering accepting Petitioner's return. Further Respondents fail to set forth

1    anything showing whether Vietnam issues travel documents to all its citizen or just some of its

2    citizens. The generalized statement that some citizens have been removed to Vietnam is

3    insufficient to show Vietnam will issue a travel document in Petitioner's case. *See e.g. Nguyen*,

4    2025 WL 2419288, at *16 (declarations showing  the country of removal is accepting more of its

5    citizens for repatriation does not equate to a significant likelihood of removal in the reasonably

6    foreseeable future); *Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at

7    *6 (E.D. Cal. Aug. 20, 2025) (removal not reasonably foreseeable where respondent states

8    individuals had recently been removed to China, whereas petitioner showed the Chinese

9    government had been designated as recalcitrant to repatriation and that respondents had failed for

10   years to deport him to China).

11       The Court thus finds the government's representations are insufficient to rebut

12   Petitioner's showing. "Courts in this circuit have regularly refused to find Respondents' burden

13   met where Respondents have offered little more than generalizations regarding the likelihood

14   that removal will occur." *Nguyen*, 2025 WL 2419288, at *16; *see Singh v. Gonzales*, 448 F.

15   Supp. 2d 1214, 1220 (W.D. Wash. 2006). As Respondents have fails to rebut Petitioner's

16   showing, he is entitled to *Zadvydas* habeas relief.

17       **B.    Due Process and Redetention**

18       Petitioner contends if this Court orders release under *Zadvydas,* due process requires he

19   be given notice, an opportunity to be heard, and proof he is a flight risk or a danger to

20   community **before** Respondents can redetain him. The Department of Homeland Security is

21   authorized to revoke a noncitizen's bond or parole "at any time," even if the individual was

22   previously released. 8 U.S.C. § 1226(b); 8 C.F.R. § 242.2(c). "[T]he government's discretion to

23   incarcerate non-citizens must comport with the requirements of due process." *Hernandez v.*

1    *Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). The Board of Immigration Appeals has further

2    limited the government's authority: "[W]here a previous bond determination has been made by

3    an immigration judge, no change should be made by [the DHS] absent a change of

4    circumstance." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981). In the past, the DHS

5    rearrested and detained individuals only after a "material" change in circumstances. *See Saravia*

6    *v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), aff'd sub nom. *Saravia for A.H. v.*

7    *Session*s, 905 F.3d 1137 (9th Cir. 2018).

8          Here, in making an individualized assessment of Petitioner's circumstances, it appears he

9    asks the Court order Respondents provide him in every circumstance a **predetention** hearing or

10   determination **before** he can be redetained. However, Respondents are statutorily empowered to

11   redetain a noncitizen who violates a condition of release under 8 C.F.R. § 214.13(i)(l) or on

12   account of changed circumstances such as facts establishing the significant likelihood a

13   noncitizen will be removed in the reasonably foreseeable future. 8 C.F.R.§ 214.13(I)(2).

14         Petitioner's request thus sweeps wide and fails to recognize there are circumstances

15   supporting lawful redetention in his case that do not require a hearing before detention can occur.

16   The Supreme Court in *Zadvydas* recognized this is observing that a noncitizen "may no doubt be

17   returned to custody upon a violation" of release conditions. *Zadvydas*, 533 U.S. 678 at 700. Here,

18   Petitioner was redetained by Respondents following his arrest on state criminal charges including

19   felony charges. It would seem Petitioner's detention without a hearing flow from these charges

20   and the fact he is subject to a final order of removal. It would seem if Petitioner was released

21   from immigration custody and again arrested and charged with criminal conduct, there would be

22   grounds to redetain him without a hearing. Further it would also seem if Respondents obtained a

23

ORDER GRANTING HABEAS CORPUS
PETITION - 8

travel document to Vietnam, Respondents could take Petitioner immediately into immigration custody and remove to his home country without a detention hearing.

Thus, the Court declines to grant Petitioner's request which would require a **pre-redetention** determination, no matter the circumstances, **before** he could be taken into custody. In declining Petitioner's request for pre-redetention protection, the Court is not foreclosing challenges Petitioner may assert if he were redetained, including redetention which he contends was effected in violation of the statutory framework, the Administrative Procedures Act, for no legitimate reason, or in violation of due process, or if he faced removal to a third country, and not his home country of Vietnam.

### C.    Third Country Removal

Petitioner contends Respondents should be barred from removing him to a third country because such removal is impermissibly punitive; additionally, he contends if Respondents pursue removal to a third country, he is entitled to certain procedural protections before such removal occurs. There is no dispute Respondents possess the authority to remove Petitioner to a third country. The dispute revolves around the manner in which third country removal might occur. Petitioner asks for notice and an opportunity to respond if the government should attempt third country removal that includes (1) reopening Petitioner's Section 240 removal proceedings, so an immigration judge may designate a specific country for removal, and (2) providing him with an opportunity to present a claim for deferral of removal as to that country under the Convention Against Torture (CAT).

Respondents claim there is no ongoing effort to remove Petitioner to any third county and his claim should be dismissed as premature. Other than claiming the matter is premature, Respondents present nothing showing Petitioner is not entitled to the due process and statutory

protections he requests. And while Respondents claim they are not presently attempting a third

country removal, they do not represent they will never change their mind or never seek third

country removal.

Further, the Court takes notice of its own records that Respondents have taken the

position "DHS has the authority to effect third country removal without the involvement of an

immigration judge, without reopening removal proceedings and without giving a noncitizen an

opportunity to present a CAT claim 'within 24 hours after the third country agrees to accept

[him] and a Notice of Removal is served." *See Ghasedi v. Wamsley*, 2:25-cv-01984-RSM,

Response, Dkt. 6 at 11-12. However, while DHS has the authority to designate a country of

removal, "it must exercise that authority in an appropriate way." *Aden v. Nielsen*, 409 F. Supp.

3d 998, 1009 (W.D. Wash. 2019). It must comply with due process. Here, that means if DHS

seeks to remove Petitioner to a third country, it must move to reopen Section 240 removal

proceedings, and a hearing must be held before an immigration judge so the petitioner can apply

for relief as to the specific country of removal.

The Court accordingly finds Petitioner must be given sufficient notice of a third country

of deportation that, given his capacities and circumstances, he would have a reasonable

opportunity to raise and pursue his claim for withholding of deportation. *See Nguyen v. Scott*,

No. 2:25-CV-01398, 2025 WL 2419288 at 18 (W.D. Wash. Aug. 21, 2025) (citation omitted).

Due process includes the right to "a full and fair hearing, an impartial decisionmaker, and

evaluation of the merits of his or her particular claim." *Id.* The due process clause requires the

government to "provide a meaningful opportunity to be heard on asylum and withholding

claims." *Id.* These requirements "flow directly from binding Ninth Circuit precedent," and to the

ORDER GRANTING HABEAS CORPUS
PETITION - 10

extent ICE policy contradicts them, it is unlawful. *Id.* at \*19 ("It would be impossible to comply both with Ninth Circuit precedent and the policy.").

In *Aden v. Nielsen*, 409 F. Supp. 3d 998, (W.D. Wash. 2019)., the petitioner was ordered to be removed to Kenya; however, after Kenya denied his travel document request, ICE scheduled his removal to Somalia without notice or an opportunity to be heard. *Id.* at 1003. The court held due process required that the removal proceedings against the petitioner be reopened and a hearing held before the immigration judge so that the petitioner could apply for relief to Somalia.

The Court also notes if the government moves forward with removal to a third country without reopening removal proceedings, disregarding the requirements of due process as laid out in *Nguyen*, 2025 WL 2419288, and the Ninth Circuit precedent upon which it relies, Petitioner would be free to move for injunctive relief, demonstrating his entitlement to an injunction, and the likelihood of irreparable harm.

For the reasons above, Court **ORDERS:**

(1)    Respondents shall release Petitioner from immigration detention on appropriate conditions no later than December 31, 2025.

(2)    Respondents shall file with the Court a notice confirming Petitioner has been released from immigration detention by January 2, 2026.

(3)    Respondents shall provide Petitioner three working days (72 hours) notice and the opportunity to respond to any third country removal attempt by providing a reopened removal proceeding before an immigration judge.

(4)    Petitioner's request the Court impose a blanket prohibition on Respondents from redetaining him unless he is first given notice and a hearing is **DENIED**. The denial of this

request for relief does not preclude Petitioner, if redetained to challenge the grounds for such

redetention or seeking injunctive relief.

     (5)     The clerk shall provide copies of this order to all counsel.

     DATED this 30th day of December, 2025.


_____

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING HABEAS CORPUS
PETITION - 12